OLIVIA PENFIELD *v.* JAMES S. THAYER, Public Administrator in the city of New York, and Administrator of HUGH ROBERTS, deceased.

In an action against an administrator, to recover money paid into his hands by a savings bank, being the amount of a deposit standing to the credit of the intestate at the time of his death; it appeared, from the testimony of a single witness, that the plaintiff and the intestate had boarded together at the house of the witness, in a town on Long Island; that the plaintiff was a woman, dependent upon his bounty; that he paid her board, and manifested a disposition to befriend and protect her; that, being about to go to the city of New York, he said to her, "My trunk and what is in it, I give to you; there is enough in it to take care of you for life," or "for a spell," adding, in the same conversation, that he wished a son of the witness to have his tool chest; that he thereupon went to New York, with no expectation, as appeared from his declarations, of returning; but that after a few days he did return, use his

tools, and resume the occupation of the room, where he soon after died; and the plaintiff then, for the first time, upon consulting her friends, took possession of the trunk, which contained articles of clothing belonging to him, and an account book given to him by the savings bank as a voucher of the amount of his deposit therein. *Held,* that the intestate made to the plaintiff a *valid gift, inter vivos,* of the bank book, the same having been in the trunk at the time of the declaration above mentioned.

From such a state of facts, the law implies such *delivery* by the donor and *acceptance* by the donee, as are required to render mere *words of gift* effectual.

A *valid gift* of a pass book, constituting the voucher or evidence of a deposit in a savings bank, is sufficient to vest in the donee a title to the money deposited; and if, upon the donor's death, the book falls into the hands of his representatives, who collect the money, the same may be recovered of them in an action by the donee.

Whether, in case the donor had lived, and our system of practice required, as formerly, that an action to recover the deposit from the bank should be brought in his name as the person to whose credit the same stood; a court of equity, upon his refusal to allow the use of his name, would compel him to carry the gift into complete execution, where there was no consideration upon which any equity could arise in favor of the donee? *Dub.*

THIS was an action against the public administrator in the city of New York, to recover $1,725, collected from the Seamen's Savings Bank, in the course of his administration upon the effects of one Hugh Roberts, deceased. The plaintiff claimed that the bank book, received by the intestate as his voucher on making the deposit, had been absolutely given to her by him, in his life time, and that she had thereby acquired a title to the amount standing to his credit in the bank.

The cause was tried by the Hon. MICHAEL ULSHOEFFER, as sole referee, and was submitted to him upon the testimony of a witness with whom the plaintiff and the intestate had boarded. A synopsis of the evidence is presented in the opinion. It may be added, in respect to the relation towards each other of the parties to the alleged gift, that the intestate had said, that he was engaged to be married to the plaintiff. His age was fifty-two; that of the plaintiff twenty; and it appeared, from the evidence, that he habitually behaved towards her, in the language of the witness, "like a father."

The referee reported against the validity of the claim, and an appeal was brought to the general term.

*George Wood*, for the plaintiff, made and argued the following points:

I. The gift of the trunk and its contents, viz., the bank book, was a perfect gift *inter vivos*, with no condition annexed.

II. The relation subsisting between the parties was such as to warrant and render probable the transaction.

III. The possession required to validate the gift was imparted in this case, especially *where no creditors are affected*. No manual delivery was necessary, either of the thing itself, or of a key, receipt, or other symbol; because the property was not under any exclusive possession of the donor requiring any act to be done to give the control of it to the donee. It was not under lock and key. It was not on the premises of the donor so as to exclude access by the donee, either actual or legal. Being in a room in a boarding-house, occupied alike by donor and donee—the room left by him being accessible to both—and the donor, immediately after leaving the premises and leaving the donee there, imparted to her such a control over the property as to amount in law to a possession sufficient to give validity to the gift. *Fletcher* v. *Fletcher*, 8 Jurist, 1,040; *Goodrich* v. *Walker*, 1 Johns. Cas. 252; *Jackson* v. *Perkins*, 2 Wend. 318; *Jackson* v. *Bodle*, 20 Johns. 187; *Jones & Riggs* v. *Blake et ux.*, 2 Hill, South Carolina Chancery Rep. 632.)

IV. There was no actual and decided resumption of the possession of the trunk or bank book by the donor, after his return to the house as a boarder, the title having completely vested in the donee.

V. Any actual resumption afterwards, with intent to deprive her of the right which had once been vested in her, would have been unavailing in law. (2 Kent's Com. 547.)

VI. There was no active control or dominion taken over

the property by the donor, after returning, to require any declaration of trust or admission that he acted as bailee for her, and she might at any time have taken the property and disposed of it as she thought proper, as well after as before his return. And on this point the referee erred both in law and fact.

VII. The referee erred in supposing there were any words used by Roberts, importing that he intended the gift to take effect in case he did not return from New York; and the donor not having attached any condition to his gift, neither the referee nor the court can lawfully conjecture that there was one.

VIII. There is no implied fraud against creditors to be inferred, in this case, from the want of any apparent change of ownership.

IX. The report is without law or evidence to support it, and it should be set aside.

The idea or argument in favor of the defendant, that the facts sworn to (which substantiate and prove the plaintiff's case) are sworn to by but *one* witness, is a fallacy, and needs but to be advanced to be so considered.

*A. J. Willard*, for the defendant.

By THE COURT. WOODRUFF, J.—The only questions raised upon this appeal, by the counsel for the parties, are,

*First.* Whether the acts of Roberts, the intestate, amounted to a present gift of a pass book, kept between himself and the Bank for Savings, so as to vest the title thereto in the appellant? and,

*Second.* Whether a gift of the pass book, made with intent to assign, passed to the donee a title to the money deposited, and of which deposit the pass book was the voucher or evidence?

Upon the second question there seems to me to be no room to doubt. For the transfer of personal property, no particular form is necessary, nor is it essential that there

should be writing. If the chattel be susceptible of manual delivery, such delivery, whether by way of voluntary donation or of sale for value, if made with intent to pass the title, has that effect. Such are ordinary cases of gifts or sales of goods. If the subject be a promissory note or bill of exchange, payable to bearer, or already endorsed in blank, the title may be transferred in the same manner ; and if the subject be a common law chose in action, the legal title of which is not assignable, the equitable interest may still pass, by delivery, with intent to transfer, either with or without consideration, so as to vest in the transferee for every beneficial purpose, as fully as if there were a formal assignment; as, for example, a bond, a note not negotiable, and, in my judgment, the like delivery of a book of accounts or a single account, with intent to transfer, (that intent, of course, being duly proved,) gives the transferee a right to collect and appropriate the money due to his own use, and, if necessary, to use the name of the assignor for that purpose. Thus, a mortgage may be assigned by parol, without writing. (*Runyon* v. *Mersereau,* 11 Johns. R. 534.) So, also, a judgment. (*Ford* v. *Stuart,* 19 Ib. 342.) An assignment of a note is good by parol. (*Wright* v. *Wright,* 1 Cowen, 598.) This last case was overruled, in *Harris* v. *Clark,* 3 Comst. 111; but it was on the ground that it was the *donor's own note* which was the subject of the alleged gift; and in the last named case, such a gift was held invalid ; but the doctrine that such a gift of the note of another is good is re-stated.

This question would not, however, be free from difficulty, if the donor were now living, and an action in his own name were necessary to make the plaintiff's title perfect, should he have attempted to recover the money, and refused to permit an action to be brought in his name for the use of the plaintiff. In such case it is at least doubtful whether she could successfully invoke the aid of a court of equity to compel him to carry into complete execution the alleged gift, there being no consideration upon which any equity in her favor could arise. But under our present system, she being

entitled to sue in her own name, and without his aid, doubt-less this difficulty would not exist. (See *Wright* v. *Wright*, 1 Cowen, 600.)

Assuming, then, that a valid gift of the pass book would be sufficient to vest in the plaintiff a title upon which she could maintain this action, did the acts of the intestate amount to such a gift?

The facts found by the referee are, that the intestate and the plaintiff boarded together at the house of the plaintiff's witness, in Sag Harbor, and that the intestate paid the plaintiff's board. And the evidence, I think, further shows, that the plaintiff was entirely dependent upon his bounty, and was regarded by him with a degree of affection prompting him to yield her his support and protection, and to make provision for her in the future.

On the 26th March, 1851, the intestate being about to go to the city of New York, entered the room in which the plaintiff was, and said to her, " My trunk, up stairs, and what is in it, I give to you; there is enough in it to take care of you *for a spell*," or " there is enough in it to take care of you *for life*," the witness being unable to recollect which precise form of words was used by him; and, having in the same conversation said that he wanted the son of the witness to have his tool chest, he left. It was conceded, on the argument, that this language of the intestate imported a present gift, and that if the words have any effect to confer the title, they are to be regarded as a gift to the plaintiff *in presenti;* and, although there are some circumstances in the case from which a possible suspicion might be entertained that the intestate was conscious of liability to sudden death, and had that thought before his mind, yet the words of the intestate are not deemed by the counsel for either party to import a *donatio causa mortis.*

The point insisted upon by the defendant's counsel is, that there was no delivery of the subject, and, therefore, that the words of gift had no effect.

The general doctrine, that a delivery is necessary to con-

summate a gift, is reiterated through a long series of decisions in this state, and is not controverted by the counsel for the plaintiff. (See *Goodrich* v. *Walker*, 1 Johns. Cas. 252; *Noble* v. *Smith et al.*, 2 Johns. Rep. 52; *Pearson* v. *Pearson*, 7 Ib. 26; *Grangiae* v. *Arden*, 10 Ib. 292; *Cook* v. *Husted*, 12 Ib. 187, and cases there cited and in notes.)

What, then, amounts to a delivery? It is said by KENT, Ch. J., in *Noble* v. *Smith*, that the rule adopted by courts of equity in relation to a *donatio causa mortis*, is also the true rule in regard to a gift without such condition, viz., that the delivery must be actual and real, or by some act clearly *equivalent;* and by the court, in *Goodrich* v. *Walker*, (1 Johns. Cas. 253,) a formal delivery is not essential if there be *any act evincing* the intent.

To my mind, the act of the intestate in abandoning the property and the place immediately upon and after the words of gift, not only without intimating an intention to return, but when his declarations indicated that he had no such intention or expectation, as clearly indicated an intention, on his part, to deliver over the subject of the gift to the plaintiff's possession and control, as if he had taken it by his hand and placed it in hers.

Suppose that in truth he had died in New York, or had left the country, or for any reason had never returned to Sag Harbor; it could not, I think, be then regarded as doubtful whether his acts were sufficient to amount to delivery.

The referee suggests, in his opinion, that there was no delivery of the key of the trunk, or of the room he had occupied. It is sufficient to say, that it is proved that there was no key, nor lock, nor fastening to the room of any kind, nor does it appear that the trunk was locked or had a key. The defendant's counsel urge that he kept his clothes in the trunk, and it may be presumed that he did not intend to give a young woman his clothes in his own life time. If any presumption may be indulged, it is clearly that the intestate wore his clothing when he left, and whether he left or took with him what the witness called " a few pieces of every-day

clothing," which were usually hung up " around the room,"
does not appear.

But an acceptance by the donee was necessary to the con-
summation of the gift as truly as a delivery by the donor.
If the plaintiff, after the departure of the intestate, had
taken possession of the bank book, or exercised any control
whatever over the contents of the trunk, such acceptance
would sufficiently appear, for it seems conceded, by all par-
ties, that the book was in the trunk at the time of his de-
parture.  No such actual acceptance appears, nor is there
any circumstance indicating that she regarded herself as
having title or claim thereto until after his death.  On the
contrary, the witness says, that a consultation was had after
his death, when the neighbors came in, and "all appeared
to think that plaintiff was entitled to the trunk and contents,
and she accordingly took it."  This is apparently the first
indication on her part that she assented to the gift or con-
ceived herself entitled to the property.

It is urged that the gift being for her benefit, her assent is
to be presumed.  This is undoubtedly true, when there is
nothing to rebut the presumption.

In *Grangiae* v. *Arden*, (10 Johns. R. 292,) there was no
proof of acceptance by the child, to whom the defendant had
given a lottery ticket, which did not appear to have *ever
been* in *her* possession, and yet the court deemed the acknowl-
edgment of the defendant that the money drawn by the
ticket was hers, sufficient ground for the jury to infer that
all was done that was necessary to vest her title, and sus-
tained a recovery.

It is urged, by the defendant's counsel, that the subsequent
acts of the intestate show that no absolute gift was intended,
and that the acquiescence of the plaintiff shows that she so
understood it.  The opinion of the referee rests very much
upon this idea.  The intestate, after a few days absence, *did
return*.  He resumed the occupation of the room in which
his trunk had remained, and, as the witness said, "he
used the tool chest and occupied the room, and used the

.trunk, or clothes in the trunk, as usual, until he died," which event occurred a little more than two months after his return.

As I have above suggested, there is nothing to warrant the idea that he did not wear away his own clothing, and if he did, then, so far as we are informed by the evidence, there was nothing in the trunk except the book now in question when the gift was made, and besides the relations of the parties, the kindness of the intestate to the plaintiff, and his oft re-peated declarations of an intention to defend and protect her, and the language used by him in making the gift, that there was enough to take care of her, &c., show that it was the bank book and the money entered there that he intended to give.

Nothing took place after his return showing that he did not intend what his words expressed, and what the witness says she understood at the time of the gift, viz., "that he gave it to her *then.*"

He had, I think, sufficiently expressed such gift. He had left the subject of the gift, and abandoned the house, appar-ently without any expectation of returning, leaving the property subject to her control and dominion. Though he did return, he is not shown to have interfered with the pro-perty, or to have done any thing as a revocation of the gift, or indicating that his gift was not absolute, so far as related to this book. He died, leaving the property subject to her con-trol still, and she took the book as her own property.

The case is not free from doubt or embarrassment, but I have come to the conclusion that the title of the plaintiff should be sustained, and the judgment reversed, and the case referred back for a further report.

Judgment reversed, and the case referred back to the referee.